1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

NANCY HABIBI,

Civil No.    08-cv-0461-JLS (POR)

11

Plaintiff,

**REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

12

v.

13

COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

14
15

Defendant.

**[Document No. 13]**
**[Document No. 16]**

16
17

**I. INTRODUCTION**

18

On March 12, 2008, Plaintiff Nancy Habibi ("Plaintiff") filed a complaint pursuant to section

19

205(g) of the Social Security Act (the "Act") requesting judicial review of the final decision of the

20

Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding

21

the denial of Plaintiff's claim for disability insurance and supplemental security income benefits.

22

(Doc. 1.)  On December 17, 2008, Plaintiff filed a motion for summary judgment regarding her

23

205(g) claim.  (Doc. 13.)  Plaintiff contends the ALJ erred in (1) determining she could return to her

24

past relevant work, and (2) in rejecting Plaintiff's treating physicians' opinions of her limitation.

25

(Id.)  On February 10, 2009, Defendant filed a cross-motion for summary judgment (Doc. 16) and

26

opposition to Plaintiff's motion for summary judgment.  (Doc. 17.)  On February 28, 2009, Plaintiff

27

filed her opposition to Defendant's cross-motion for summary judgment.  (Doc. 19.)

28

//

1    The Court finds the motions appropriate for submission on the papers and without oral

2    argument pursuant to Local Rule 7.1(d)(1).  For the reasons set forth herein, the Court recommends

3    Plaintiff's Motion for Summary Judgment (Doc. 13) be DENIED and Defendant's cross motion for

4    summary judgment be GRANTED.  (Doc. 16.)

5                              **II. PROCEDURAL BACKGROUND**

6                      On April 14, 2005, Plaintiff filed an initial application for Disability Insurance Benefits.

7    (Administrative Record[1] 15.)  After a June 10, 2005 denial at the initial determination (AR 31) and

8    an October 6, 2005, denial on reconsideration (AR 37), Plaintiff filed a timely request for hearing

9    before an administrative law judge (hereinafter "ALJ") on December 8, 2005.  (AR 42.)  On

10   December 5, 2006, Plaintiff, represented by Mary Mitchell, Esq., appeared and testified at an

11   administrative hearing before an ALJ.  (AR 326-346.)  Victor Schorn, M.D., provided expert

12   medical testimony, and Bonnie SinClair, M.S., provided expert vocational testimony.  (Id.)  On

13   March 15, 2007, the ALJ denied Plaintiff benefits.  (AR 15-27.)  The decision of the Social Security

14   Administration (hereinafter "SSA") became final when the Appeals Council adopted the ALJ's

15   findings by decision dated January 15, 2008.  (AR 4-6.)  Thereafter, Plaintiff filed the instant action

16   in Federal Court on March 12, 2008. (Doc. 1.)

17                               **III. FACTUAL BACKGROUND**

18                      Plaintiff was born on March 28, 1963.  (AR 74, 329.)  Plaintiff graduated high school in

19   Mexico and emigrated to the United States in the early 1980's.  (AR 329-330.)  Plaintiff became a

20   United States citizen in March, 1994.  (AR 330.)  Plaintiff can read and speak the English language.

21   (AR 84, 220.)

22                      From November, 1992 through January, 1993, Plaintiff worked as an assistant sales clerk at

23   See's Candies.  (AR 94, 330-331.)  From September, 1993 through June, 2001, Plaintiff worked as a

24   child care aid for a children's hospital.  (Id.)  From July, 2001 through March, 2002, Plaintiff

25   worked as a file clerk for the same children's hospital.  (Id.)

26                      At the December 5, 2006 hearing before the ALJ, Plaintiff testified she suffers from pain in

27   her right shoulder and lower back.  (AR 331, 333.)  Specifically, Plaintiff alleges disability based

28   _____

                    [1]Administrative Record, hereinafter "AR."

upon lumbar spine disorder, right shoulder impairment with tendinitis, and right shoulder rotator cuff strain.  (AR 18.)  At the hearing, Plaintiff testified she cannot raise her right arm above her head.  (AR 336.)  She also testified she drives a car three-four times a week, does house chores, takes care of a small dog, and walks for fifteen-twenty minutes every day. (333-335.)

Dr. Schorn, the medical expert, testified Plaintiff has mild right shoulder impingement syndrome, with tendinitis, and mild degenerative disc disease.  (AR 338-340.)  He stated Plaintiff has the functional capacity to lift 20 pounds on occasion and 10 pounds frequently.  (AR 340.)  He further testified Plaintiff could use her right upper extremity 70 percent of the time.  (Id.)

Ms. SinClair, the vocational expert, testified a hypothetical person of the age, education, and work experience of Plaintiff, with the capacity to lift 20 pounds occasionally, and 10 pounds frequently, who can sit and stand 6 out of 8 hours, and who is limited to shoulder-high activity, can perform Plaintiff's past relevant work of file clerk and associate.  (AR 344.)  Ms. SinClair further testified a hypothetical person with the same characteristics as the previous hypothetical, with the exception of a capacity to lift a maximum of 10 pounds rather than 20 pounds with the right upper extremity, would be limited to sedentary work.  (Id.)  She noted sedentary work includes the job of stuffer, assembler, and folder.  (AR 345.)

After consideration of all the evidence, the ALJ concluded Plaintiff had not been under disability within the meaning of the SSA since her alleged disability onset of March 23, 2003.  (AR 16.)  The ALJ found: (1) Plaintiff has not engaged in substantial gainful activity since March 23, 2003; (2) Plaintiff has the severe impairments of mild degenerative lumbar disc disease and mild right shoulder impairment with tendinitis; (3) Plaintiff's impairments have not met or equaled the requirements of any listing of the Listing of Impairments; (4) Since March 23, 2003, Plaintiff has had a residual functional capacity to lift/carry 20 pounds occasionally, lift/carry 10 pounds frequently, stand/walk for 6 hours of an 8 hour day, and sit for 6 hours of an 8 hour day with no above the shoulder activity with her dominant right arm; and (5) Plaintiff is able to perform her past relevant work as a file clerk and sales clerk.  (AR 17-27.)

In determining Plaintiff's residual functional capacity, the ALJ considered opinion evidence, Plaintiff's symptoms, and the extent to which Plaintiff's symptoms were consistent with the

objective medical evidence and other evidence.  (AR 19-26.)  The ALJ cited various physicians[2] who claimed Plaintiff was solely restricted from heavy lifting and repetitive overhead work with her right shoulder.  (AR 20.)  Although other physicians[3] concluded Plaintiff had more severe limitations, the ALJ concluded their opinions of Plaintiff's disability status were not entitled to controlling weight for the following reasons: (1) Dr. Previte failed to provide a diagnosis or cite medical findings in his work status reports and physician's progress reports, in which he found Plaintiff disabled for periods of 4-6 weeks;[4] (2) Dr. Greenwald only saw Plaintiff once; (3) Dr. Kiddy, a chiropractor, is not an acceptable medical source; (4) these physicians' opinions are inconsistent with other assessments of Plaintiff's disability; and (5) the opinions are inconsistent with the weight of the record as a whole and therefore entitled to reduced weight.  (AR 22-24.)

In determining Plaintiff's ability to perform her past relevant work, the ALJ relied on Ms. SinClair's conclusion an individual with Plaintiff's characteristics would be able to work as a file clerk and sales clerk.  (AR 27.)  The ALJ further concluded Plaintiff was unable to perform her past relevant work as a child care provider because its requirements for medium exertion were in excess of Plaintiff's residual functional capacity.  (Id.)

**1.     Medical Evidence**

On September 7, 2001, Plaintiff felt her arm "crack" while attempting to pull a file from a cabinet while working as a file clerk in the Children's Hospital Radiology Department.  (AR 138.) On September 20, 2001, while filing folders at work, Plaintiff fell backwards off a stool, landing on her buttocks and back.  (AR 174.)

**a.     Treating Provider Evidence**

Shortly after suffering injury to her shoulder and back, Plaintiff received treatment through her employer's Occupational Health unit.  (AR 120-140.)  On September 21, 2001, Plaintiff saw Lisa Sheehan, a Nurse Practitioner.  (AR 138.)  Plaintiff told Ms. Sheehan she felt pain following

---

[2] These physicians include Dr. McSweeney, Dr. Murphy, Dr. Previte, Dr. Sabourin, Dr. Abbott, Dr. Stover, Dr. Meek, and Dr. Do.

[3] These physicians include Dr. Previte, Dr. Greenwald, and Dr. Kiddy.

[4] Dr. Previte's complete opinions are set forth in pgs.5-6.

her September 7, 2001 injury and saw her private health care provider on September 10, 2001.  (AR 138.)  The private health care provider took x-rays, determined she had not suffered a fracture, and advised her to take over the counter Tylenol or Advil and use ice/heat.  (Id.)  On September 28, 2001, at a follow-up visit, Ms. Sheehan diagnosed Plaintiff with rotator cuff tendinitis and advised Plaintiff to limit her weight lifting to 20 pounds and restricted above-the-shoulder lifting with her right arm.  (AR 131.)  On October 9, 2001, Plaintiff told Ms. Sheehan her shoulder felt 30 percent improved.  (AR 129.)  Ms. Sheehan recommended physical therapy two to three times per week for two to three weeks and advised Plaintiff to continue her modified duty, which included a weight lifting restriction of 20 pounds and no above-the-shoulder lifting.  (Id.)

On October 16, 2001, Dr. Munday noted Plaintiff was not complaining of any pain, although she did report some numbness in her right shoulder.  (AR 125.)  Dr. Munday recommended no lifting over 25 pounds and he anticipated that once she had physical therapy, Plaintiff would be able to return to regular work.  (Id.)  On December 6, 2001, Ms. Sheehan noted Plaintiff stated she was at 85 percent in regard to resolution of her symptoms, even though she continued to feel right shoulder pain after 25 minutes of use.  (AR 122.)  Ms. Sheehan recommended continued modified duty, with a weight lifting restriction of 30 pounds.  (Id.)

On March 11, 2003, Dr. Previte completed an Initial Complex Orthopaedic Evaluation of Plaintiff.  (AR 213-222.)  Plaintiff complained of right shoulder pain, low back pain, and development of left shoulder pain.  (AR 213.)  Dr. Previte diagnosed Plaintiff with low back strain with persistent lumbalgia and a right shoulder strain with residual rotator cuff syndrome.  (AR 221.)  He opined Plaintiff was capable of continuing modified duties with the avoidance of heavy lifting and overhead work.  (AR 222.)

On August 7, 2003, Dr. Previte completed a Primary Treating Physician's Permanent and Stationary Evaluation.  (AR 200-206.)  Dr. Previte diagnosed Plaintiff with impingement syndrome in the right shoulder, but noted Plaintiff was not interested in surgical treatment.  (AR 204.)  He further stated "additional temporary total disability ha[d] been incurred on the basis of her inability to perform her normal work activities."  (AR 205.)  Due to his belief Plaintiff experienced intermittent/moderate shoulder pain when performing overhead work or forceful function, Dr.

1   Previte precluded Plaintiff from "forceful use of the right upper extremity below shoulder level and
2   from overhead work with the right upper extremity."  (AR 205.)

3        Dr. Previte completed physician's progress reports for Plaintiff on April 15, 2003 (212, 324);
4   May 1, 2003 (AR 211, 323); May 29, 2003 (AR 210, 322); June 19, 2003 (AR 209, 321); July 7,
5   2003 (AR 320); August 7, 2003 (AR 319); August 22, 2003 (AR 318); September 11, 2003 (AR
6   317); September 25, 2003 (AR 316); October 21, 2003 (AR 315); November 6, 2003 (AR 314);
7   December 9, 2003 (AR 313); and January 22, 2004 (AR 199, 312.)  In these reports, Dr. Previte
8   deemed Plaintiff temporarily disabled for periods of four-six weeks.

9        Dr. Previte completed Work Status Reports on April 15, 2003 (AR 275); May 29, 2003 (AR
10   274); June 19, 2003 (AR 273); September 25, 2003 (AR 272); October 21, 2003 (AR 271); and
11   January 22, 2004 (AR 311.)  In these reports, Dr. Previte reported Plaintiff to be unable to work for
12   periods of four-six weeks.

13        On May 15, 2004, Dr. Previte noted Plaintiff complained of persistent right shoulder
14   symptoms and sought authorization to perform surgery.  (AR 196.)  Dr. Previte stated that after
15   surgery, Plaintiff would return to temporary total disability status for three-four weeks and then
16   return to modified duties.  (Id.)  He also stated he anticipated Plaintiff would return to permanent
17   and stationary status within 3 months of undergoing right shoulder surgery.  (Id.)[5]

18        **b.**      **Examining Physician Evidence**

19        On February 21, 2002, John Miles, M.D., diagnosed Plaintiff with mild right shoulder
20   impingement syndrome, which he indicated had not yet failed nonsurgical management.  (AR 146.)
21   He recommended an additional two weeks of physical therapy and suggested Plaintiff remain on
22   modified duty with weightlifting restrictions of 10 pounds and no overhead lifting or reaching with
23   the right arm.  (AR 147.)  On April 23, 2002, Dr. Miles reported Plaintiff indicated she was
24   somewhat better.  (AR 144.)  Since her symptoms were improved, Dr. Miles recommended she
25   return to regular work status as of April 23, 2002.  (Id.)  On May 24, 2002, Dr. Miles prepared a
26   Permanent and Stationary Report, in which he diagnosed mild right shoulder impingement
27   syndrome.  (AR 142.)  Dr. Miles noted despite Plaintiff's intermittent slight pain affecting her right

28

---

[5] A review of the record indicates Plaintiff never underwent right shoulder surgery.  (AR 1-346.)

shoulder, there were no permanent work restrictions for her in the open labor market.  (Id.)
Regarding future medical care, Dr. Miles noted Plaintiff's symptom's were not severe enough to
justify surgical intervention at that time.  (Id.)

On November 12, 2002, James McSweeney, M.D., performed a Qualified Medical
Examination, in which he noted Plaintiff continued her regular duties and reported difficulty with
overhead lifting.  (AR 156.)  Plaintiff reported she took 3-4 Motrin per day and was not under a
physician's care.  (Id.)  Plaintiff indicated she did not want to undergo surgery and stated her
symptoms were "tolerable" as long as she did not have to perform overhead lifting.  (AR 159.)
Although Dr. McSweeney agreed with Dr. Miles that Plaintiff was permanent and stationary, he
disagreed with his opinion that work restrictions were not needed.  (Id.)  Accordingly, Dr.
McSweeney found Plaintiff was precluded from very heavy lifting and repetitive overhead work.
(Id.)

On November 4, 2003, Jeffrey Kiddy, D.C., a chiropractor, diagnosed Plaintiff with spinal
sublux, lumbar IVD disorder with myelopathy, and internal derangement-shoulder.  (AR 280.)  He
recommended Plaintiff remain off work per Dr. Previte's orders.  (Id.)  On December 12, 2003, Dr.
Kiddy recommended Plaintiff remain off work for 45 days.  (AR 279.)  On January 21, 2004, Dr.
Kiddy recommended Plaintiff remain off work an additional 45 days.  (AR 278.)  On February 10,
2004, Plaintiff recommended Plaintiff remain off work per Dr. Previte's orders.  (AR 277.)

On December 22, 2003, Eric Korsh, M.D., performed an Orthopedic Spine Surgery
Consultation.  (AR 164-171.)  Plaintiff complained primarily of pain in her low back and right
shoulder as a result of an incident at work.  (AR 165.)  Plaintiff reported she could live with the pain
at the current level and did not require more aggressive intervention.  (AR 169.)

On March 9, 2004, Paul Murphy, M.D., provided an Agreed Medical Examiner's Report.
(AR 173-193.)  Dr. Murphy stated he would preclude Plaintiff from very heavy work and very
forceful activities above her shoulder.  (AR 179, 190.)  Dr. Murphy further opined Plaintiff has lost
approximately 25 percent of her pre-injury capacity for performing such activities as bending,
stooping, lifting, pushing, pulling, and climbing and other activities involving comparable physical
effort.  (AR 179.)  Dr. Murphy concluded Plaintiff had received the maximum benefits of medical

1 treatment.  (Id.)

2       On May 16, 2005, Thomas Sabourin, M.D., performed an Orthopaedic Consultation.  (AR

3 225-229.)  He concluded Plaintiff could lift or carry 50 pounds occasionally and 25 pounds

4 frequently and that she could stand, walk and sit six hours of an eight hour workday.  (AR 229.)

5       On June 2, 2005, John Meek, M.D., provided a Residual Functional Capacity Assessment

6 (AR 231-237.)  Dr. Meek concluded Plaintiff should avoid frequent overhead reaching with her right

7 hand.  (AR 234.)  State agency physician Thu Do reviewed the medical evidence and affirmed Dr.

8 Meek's assessment.  (AR 238.)

9       On September 20, 2005, Christopher Abbott, M.D., provided a Complete Internal Medicine

10 Evaluation at the request of the SSA.  (AR 241-246.)  Dr. Abbott concluded Plaintiff could carry or

11 lift 20 pounds occasionally and 10 pounds frequently and that she had no postural, manipulative,

12 visual, communicative, or environmental limitations.  (AR 245.)

13       On December 28, 2006, at the request of the SSA, Kenneth Stover, M.D. examined Plaintiff

14 and provided a Neurological Evaluation.  (AR 250-259.)  Dr. Stover concluded Plaintiff was not

15 restricted, from a neurological standpoint, in exertional, postural, or manipulative functions.  (AR

16 253.)

17       On January 10, 2007, Steven Greenwald, M.D., completed a Medical Assessment Form of

18 Ability to do Work-Related Activities.  (AR 260-270.)  Dr. Greenwald declared Plaintiff totally

19 disabled based on the subjective factors of disability.  (AR 269.)

**IV. DISCUSSION**

21 **1.       Legal Standard Regarding Review of Denial of Disability Claim**

22       To qualify for disability benefits under the Social Security Act, applicants must show two

23 things:  (1) They suffer from a medically determinable impairment that can be expected to last for a

24 continuous period of twelve months or more, or would result in death; and (2) the impairment

25 renders applicants incapable of performing the work they previously performed or any other

26 substantially gainful employment that exists in the national economy.  See 42 U.S.C.A. §§

27 423(d)(1)(A), (2)(A) (West Supp. 2008).  An applicant must meet both requirements to be classified

28 as "disabled."  Id.

Sections 205(g) and 1631(c)(3) of the Social Security Act allow applicants whose claims have been denied by the SSA to seek judicial review of the Commissioner's final agency decision. 42 U.S.C.A. §§ 405(g), 1383(c)(3) (West Supp. 2008). The Court should affirm the decision unless "it is based upon legal error or is not supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion[,]" considering the record as a whole. Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It means "'more than a mere scintilla but less than a preponderance[]'" of the evidence. Bayliss, 427 F.3d at 1214 n.1 (quoting Tidwell, 161 F.3d at 601). "'[T]he court must consider both evidence that supports and the evidence that detracts from the ALJ's conclusion . . . .'" Frost v. Barnhart, 314 F.3d 359, 366-67 (9th Cir. 2002) (quoting Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

To determine whether a claimant is "disabled," the Social Security regulations use a five-step process outlined in 20 C.F.R. § 404.1520 (2008). If an applicant is found to be "disabled" or "not disabled" at any step, there is no need proceed further. Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000)). Although the ALJ must assist the applicant in developing a record, the applicant bears the burden of proof during the first four steps. Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999). If the fifth step is reached, however, the burden shifts to the Commissioner. Id. at 1098. The steps for evaluating a claim are as follows:

**Step 1.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.

**Step 2.** Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.

**Step 3.** Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step

1    four.

2            **Step 4.**  Is the claimant able to do any work that he or she has done in the
     past?  If so, then the claimant is "<u>not disabled</u>" and is not entitled to disability
3    insurance benefits.  If the claimant cannot do any work he or she did in the past, then
     the claimant's case cannot be resolved at step four and the evaluation proceeds to the
4    fifth and final step.

5            **Step 5.**  Is the claimant able to do any other work?  If not, then the claimant is
     "<u>disabled</u>" and therefore entitled to disability insurance benefits.  If the claimant is
6    able to do other work, then the Commissioner must establish that there are a
     significant number of jobs in the national economy that claimant can do.  There are
7    two ways for the Commissioner to meet the burden of showing that there is other
     work in "significant numbers" in the national economy that claimant can do:  (1) by
8    the testimony of a vocational expert, or (2) by reference to the Medical-Vocational
     Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this
9    burden, the claimant is "<u>not disabled</u>" and therefore not entitled to disability
     insurance benefits.  If the Commissioner cannot meet this burden, then the claimant is
10   "<u>disabled</u>" and therefore entitled to disability benefits.

11   <u>Id.</u> at 1098-99 (footnotes and citations omitted); <u>see also</u> <u>Bustamante v. Massanari</u>, 262 F.3d 949,

12   954 (9th Cir. 2001) (giving an abbreviated version of the five steps).

13           Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the

14   Commissioner's decision.  42 U.S.C.A. § 405(g).  The matter may also be remanded to the Social

15   Security Administration for further proceedings.  <u>Id.</u>  After a case is remanded and an additional

16   hearing is held, the Commissioner may modify or affirm the original findings of fact or the decision.

17   <u>Id.</u>

18           "If the evidence can reasonably support either affirming or reversing the Secretary's

19   conclusion, the court may not substitute its judgment for that of the Secretary."  <u>Flaten v. Sec'y</u>

20   <u>Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).  The Court must uphold the denial of

21   benefits if the evidence is susceptible to more than one rational interpretation, one of which supports

22   the ALJ's decision.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).  Finally, the court will not

23   reverse an ALJ's decision for harmless error, which exists when it is clear from the record that "the

24   ALJ's error was 'inconsequential to the ultimate nondisability determination.' "  <u>Robbins v. Soc.</u>

25   <u>Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006) (quoting <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454

26   F.3d 1050, 1055-56 (9th Cir.2006)).

27   **2.      Step Four of the Disability Analysis:  Past Relevant Work**

28           The ALJ found in favor of Plaintiff at Steps 1-3 of the disability analysis.  (AR 15-19.)

1    However, the ALJ found Plaintiff failed to meet her burden at Step 4 and determined she could

2    return to her past relevant work.  (AR 26-27.)

3            Plaintiff contends the ALJ erred at Step 4 in determining she could return to her past relevant

4    work. (Doc. 139-17.)  Specifically, Plaintiff contends the evidence failed to establish her activity

5    selling chocolate for See's Candy qualified as substantial gainful activity because: (1) the activity

6    was too brief; (2) she did not earn enough money; and (3) the ALJ decision failed to provide a

7    detailed factual finding explaining his conclusion that Plaintiff's position as a sales clerk was

8    substantial gainful activity and past relevant work.  (Doc 13 at 10-13.)  Moreover, Plaintiff contends

9    the ALJ's determination Plaintiff could return to her positions as sales clerk and file clerk was not

10   supported by the evidence.  (Doc. 13 at 12-17.)  Specifically, Plaintiff contends the ALJ's decision

11   failed toascertain the specific demands of Plaintiff's past work as a sales clerk and file clerk.  (Doc.

12   13 at 14.)

13           Defendant contends the ALJ appropriately found Plaintiff's employment as a sales clerk met

14   the regulatory definition of substantial gainful activity and that she maintained the capacity to

15   perform work as a sales clerk and as a file clerk.  (Doc. 16 at 6-7.)

16           At step four, claimants have the burden of showing they can no longer perform past relevant

17   work.  Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).  "Although the burden of proof lies

18   with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to

19   support this conclusion.  SSR 82-62; See 20 C.F.R. sections 404.1571.  This is done by looking at

20   the "residual functional capacity and the physical and mental demands" of the claimant's past

21   relevant work.  Pinto, 249 F.3d at 844-45.  Residual functional capacity is the *most* a claimant can

22   do despite her limitations.  20 C.F.R. section 404.1545.  The RFC assessment must be based on all

23   of the relevant evidence in the record.  Id.  An ALJ's determination of a claimant's RFC will be

24   affirmed if the ALJ applied the proper legal standard and the decision is supported by substantial

25   evidence.  Bayliss v. Barnhart, 427 F.3d 1211, 1271 (9th Cir. 2005) (internal citations omitted).

26           To determine whether the claimant has the capacity to perform past relevant work, the ALJ

27   must assess whether the claimant can perform: (1) The actual functional demands and job duties of a

28   particular past relevant job; or (2) the functional demands and job duties of the occupation as

generally required by employers throughout the national economy.  Pinto, 249 F.3d at 845.  "Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, and the claimant's own testimony."  Id. at 845.  Past relevant work as generally performed is determined by referring to the Dictionary of Occupational Titles.  Id. at 845.

In order to constitute work experience, a claimant's past work must have been substantial gainful activity.  20 C.F.R. section 404.1565(a).  Substantial work activity is work activity that involves doing significant physical or mental activities.  "Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. section 404.1572(a).  "Work activity is gainful if it is the kind of work usually done for profit, whether or not a profit is realized."  20 C.F.R. section 404.1572(b).  Moreover, the length of time during which the person gained experience "should have been sufficient for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation.  The length of time this would take depends on the nature and complexity of the work."  Social Security Ruling 82-62.  Working for a period less than 3 months will be considered substantial gainful activity, unless the claimants' impairment forced them to stop working or to reduce the amount of work they do.  See 20 C.F.R. section 404.1574©).

Here, the Court finds the ALJ properly found Plaintiff capable of performing her past relevant work as a file clerk and sales clerk.  (AR 26.)  First, after careful consideration of the entire record, the ALJ properly found Plaintiff has a residual functional capacity (RFC) to lift/carry 20 pounds occasionally, lift/carry 10 pounds frequently, stand/walk for 6 hours of an 8 hour day, and sit for 6 hours of an 8 hour day with no above-the-shoulder activity with the dominant right arm.  (AR 189.)  In determining Plaintiff's RFC, the ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  Additionally, the ALJ stated he considered opinion evidence in making his RFC determination.  (Id.)

Specifically, in his decision, the ALJ cited eight physicians' conclusions to support his determination regarding Plaintiff's residual functional capacity.  (AR 20-21.)  First, the ALJ

1   considered Dr. McSweeney's description on November 12, 2002 of Plaintiff's condition as

2   permanent and stationary, as well as his assessment that Plaintiff's sole restriction be preclusion

3   from heavy lifting and repetitive overhead work with her dominant right shoulder.  (AR 20, 159.)

4   Second, the ALJ noted Dr. Murphy's March 9, 2004 diagnosis, which only precluded Plaintiff from

5   very heavy work and very forceful above-the-shoulder activities.  (AR 20, 179, 190).  Third, the ALJ

6   considered Dr. Previte's conclusion from March 11, 2003 that Plaintiff was capable of heavy lifting

7   and repetitive bending/stooping while avoiding overhead work with her right arm.  (AR 21, 222.)

8   The ALJ also considered Dr. Previte's August 7, 2003 permanent and stationary report, which

9   described Plaintiff to be precluded from forceful use of the right upper extremity below shoulder

10  level and from overhead work with the right upper extremity.  (AR 21.)  Further, the ALJ considered

11  Dr. Previte's March 2, 2004 permanent and stationary report, in which Dr. Previte reported Plaintiff

12  was precluded from very heavy work.  (AR 21.)

13       Fourth, the ALJ considered Dr. Sabourin's May 16, 2005 assessment that Plaintiff had a RFC

14  to lift/carry 50 pounds occasionally, lift/carry 10 pounds frequently, stand/walk for six-to eight

15  hours, and sit for six-to-eight hours of an eight hour day.  (AR 21.)  Fifth, the ALJ noted Dr.

16  Abbott's September 20, 2005 assessment, which stated Plaintiff has a RFC to lift/carry 20 pounds

17  occasionally, lift/carry 10 pounds frequently, stand/walk for six-to eight hours, and sit for six-to-

18  eight hours of an eight hour day.  (AR 21.)  Sixth, the ALJ considered Dr. Stover's December 28,

19  2006 opinion, which assessed Plaintiff with a RFC of unlimited lifting, carrying, standing, walking,

20  sitting, and pushing/pulling with a limitation to frequent climbing, balancing, kneeling, crouching,

21  crawling, and stooping.  (AR 21.)  Finally, the ALJ considered two state agency consultants, Dr.

22  Meek and Dr. Do, who assessed claimant with less severe limitation than some physicians cited

23  above.  (AR 21.)  Dr. Meek assessed Plaintiff with a RFC to lift/carry 50 pounds occasionally,

24  lift/carry 25 pounds frequently, stand/walk for six-to eight hours, and sit for six-to-eight hours of an

25  eight hour day with a limitation to frequent overhead reaching with the right hand.  (AR 21.)

26       Although the ALJ noted Dr. Previte, Dr. Kiddy, and Dr. Greenwood concluded Plaintiff had

27  more severe limitations than determined by other physicians, he provided 15 reasons why their

28

1   opinions were given little weight.[6]  (AR 21-24.)  The ALJ gave greater weight to the opinions of Dr.

2   Abbott, Dr. Korsh, Dr. Maywood, Dr. McSweeney, Dr. Miles, Dr. Murphy, Dr. Sabourin, and Dr.

3   Stover than Dr. Previte, Dr. Kiddy or Dr. Greenwood because the opinions of the former physicians

4   was more "consistent with the totality of the evidence, better supported by the medically acceptable

5   diagnostic techniques," and consistent with the points cited in Plaintiff's subjective complaints.  (AR

6   24.)  Therefore, the ALJ properly determined the most Plaintiff could do, despite her limitations, by

7   considering all the evidence in the record.  20 C.F.R. section 404.1545.

8         Furthermore, based on the evidence, the ALJ properly determined Plaintiff's allegations of

9   disabling limitations were not credible.  (AR 24.)   First, the ALJ noted Plaintiff's treatment

10   reflected a conservative approach since her alleged disability onset date.  (AR 24.)  Second, the ALJ

11   considered the fact that the record did not show Plaintiff required any special accommodations to

12   relieve her alleged pain or other symptoms.  (AR 24.)  Third, the ALJ found the record does not

13   show Plaintiff's medications were ineffective or that they caused her debilitating side effects.  (AR

14   24.)

15         Fourth, despite Plaintiff's complaints of physical weakness, the ALJ noted that Dr.

16   McSweeney, Dr. Previte, Dr. Maywood, Dr. Kiddy, Dr. Korsh, Dr. Abbott, and Dr. Stover found

17   Plaintiff to have normal upper and lower extremity strength.  (AR 24-25.)  Fifth, the ALJ cited

18   reports from Dr. Previte, Dr. Kiddy, Dr. Korsh, Dr. Sabourin, Dr. Abbott, and Dr. Stover to refute

19   Plaintiff's claims of difficulty with standing and walking and disabling leg pain.  (AR 25.)   Sixth,

20   the ALJ considered Dr. Miles, Dr. Previte, Dr. Kiddy, Dr. Sabourin, and Dr. Abbott's reports to

21   conclude the "totality of the evidence does not support [Plaintiff's] claims of disabling shoulder and

22   arm pain.  (AR 25.)   Seventh, based on Dr. McSweeney, Dr. Kiddy, Dr. Previte, and Dr. Abbott's

23   reports, the ALJ concluded the evidence contradicted Plaintiff's assertions of disabling back pain.

24   (AR 25.)  Eighth, the ALJ cited Dr. Maywood, Dr. Murphy, Dr. Sabourin, and Dr. Stover to refute

25   Plaintiff's claims of disabling hand pain.  (AR 25.)   Ninth, the ALJ cited Dr. Previte, Dr. Kiddy, Dr.

26   Sabourin, and Dr. Abbott to refute Plaintiff's claims of disabling neck pain.  (AR 25.)  Tenth, the

27   ─────────────

28         [6] The reasons the ALJ afforded Dr. Previte, Dr. Kiddy, and Dr. Greenwood's opinions little weight will be discussed
at length in the following section.  It should be noted the ALJ relied on both Dr. Previte and Dr. Greenwood's opinions in
determining Plaintiff's RFC, even though he ultimately rejected their opinions regarding Plaintiff's disability status.

1    ALJ noted the Plaintiff looked for work at Wal-Mart and Costco only three months before the

2    hearing, which he concluded was inconsistent with her claim of disability.  (AR 25.)  Thus, the ALJ

3    properly determined Plaintiff's allegations were not credible to establish a more restrictive RFC.

4    (AR 25.)

5          Additionally, based on Plaintiff's RFC, Plaintiff's testimony, the vocational report, and the

6    Dictionary of Occupational Titles ("DOT"), the ALJ properly determined Plaintiff could perform her

7    past relevant work of sales clerk and file clerk as actually and generally performed.  See Pinto 249

8    F.3d at 845.  First, the ALJ utilized the appropriate sources of information– the Plaintiff's own

9    testimony and a properly completed vocational report– to determine Plaintiff could perform the

10   actual functional demands and job duties of her past relevant work.  Id.  In determining Plaintiff's

11   RFC, the ALJ specifically referenced Plaintiff's testimony regarding her attempt to attain work at

12   Wal-Mart and Costco only three months before the hearing.  (AR 26, 332-333.)  The ALJ concluded

13   Plaintiff's effort to obtain employment was inconsistent with her claim of disability.  (AR 26.)

14   Further, the ALJ considered Ms. SinClair's expert testimony at the hearing in concluding Plaintiff

15   was able to sustain her past relevant work as a file clerk and sales clerk.  (AR 26.)  Specifically, the

16   ALJ considered Ms. SinClair's conclusion that an individual with Plaintiff's RFC and past relevant

17   work experience could perform and sustain Plaintiff's past relevant work as a file clerk and sales

18   clerk.  (AR 27.)  Thus, based on the DOT numbers, the ALJ correctly concluded Plaintiff could

19   actually perform the past relevant work of a sales clerk and file clerk.

20         Further, the ALJ properly determined Plaintiff could perform the functional demands and job

21   duties of the occupation as generally required by employers throughout the national economy.  See

22   Pinto, 249 F.3d at 845.  The ALJ thoroughly reviewed Plaintiff's past relevant work DOT numbers.

23   (AR 26.)  The ALJ noted Ms. SinClair identified Plaintiff's past relevant work as a file clerk and

24   sales clerk as semi-skilled requiring light work, and  her past relevant work as a child care provider

25   as semi-skilled requiring medium work.  (AR 27.)  Based on the DOT numbers and his previous

26   determination regarding Plaintiff's RFC, the ALJ concluded Plaintiff's previous work as a sales

27   clerk and file clerk was consistent with her RFC, whereas her previous work as a child care provider

28   was not.  (AR 27.)  Thus, the ALJ properly determined Plaintiff could generally perform the past

1  relevant work of a sales clerk and file clerk.

2       Plaintiff, however, contends her previous work as a sales clerk does not qualify as past

3  relevant work because (1) she did not earn enough money, and (2) it was too brief.  Plaintiff

4  correctly asserts the ALJ failed to address whether Plaintiff's previous work as a sales clerk

5  constituted substantial gainful activity.  The ALJ did not address the fact that Plaintiff was paid

6  $6.50 per hour  at See's Candies, and that she therefore engaged in substantial gainful activity.  (AR

7  94-95.); See 20 C.F.R. section 404.1572(a).  Further, the ALJ failed to address Plaintiff's statement

8  in her work history report that she had to use machines, tools, or equipment while she was an

9  employee at See's Candies.  (AR 95.)  The ALJ therefore never concluded Plaintiff had sufficient

10 time to learn the techniques, acquire the information, and develop the facility needed for average

11 performance on the job.  See Social Security Ruling 82-62.

12      Nonetheless, Plaintiff never asserts her past relevant work as a files clerk does not constitute

13 substantial gainful activity.  Based on the record, the ALJ properly found Plaintiff could perform her

14 past relevant work as a files clerk.  Therefore, any error the ALJ made in finding Plaintiff could do

15 her past relevant work of a sales clerk was harmless, and the court will not reverse an ALJ's decision

16 for harmless error, which exists when it is clear from the record that "the ALJ's error was

17 inconsequential to the ultimate nondisability determination. " Robbins, 466 F.3d at 885.

18      Accordingly, the Court finds the ALJ's assessment of Plaintiff's ability to perform her past

19 relevant work as a file clerk is supported by substantial evidence and not based on legal error.  Thus,

20 the Court RECOMMENDS Plaintiff's motion for summary judgment be DENIED and Defendant's

21 cross-motion for summary judgment be GRANTED as to this issue.

22 **3.    Treating Physician**

23      Plaintiff contends the ALJ improperly rejected Plaintiff's treating physicians' opinions of her

24 limitations without specific and legitimate reasons and based upon insubstantial evidence in the

25 record.  (AR 17-26.)  Specifically, Plaintiff asserts the ALJ erred in affording reduced weight to Dr.

26 Previte's work status reports and his March 2, 2004 report.  (Doc. 13 at 18-19, 22-23.)  Second,

27 Plaintiff contends the ALJ improperly rejected the opinion of Dr. Kiddy, a chiropractor.  (Doc. 13 at

28 20-21.)  Third, Plaintiff contends the ALJ inappropriately considered the opinions of Dr. Miles and

1  Dr. McSweeney because their reports predated the alleged onset date of Plaintiff's disability.  (Doc.

2  13 at 21.)  Finally, Plaintiff asserts the ALJ could not consider the opinions of Dr. Greenwald, Dr.

3  Sabourin, Dr. Abbott, and Dr. Stover after rejecting them.  (Doc. 13 at 21, 23-25.)

4      Defendant contends the ALJ provided specific and legitimate reasons based on substantial

5  evidence for rejecting the opinions of Plaintiff's treating physicians.  (Doc. 16 at 8-9.)

6      "Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians:

7  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

8  claimant (examining physicians); and (3) those who neither examine nor treat the claimant

9  (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

10  The opinions of treating doctors are generally given more weight than the opinions of nontreating

11  doctors.  Id. (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).  A treating physician's

12  opinion must be accorded controlling weight if it is "well-supported by medically acceptable clinical

13  and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in

14  [the] case record . . . ."  20 C.F.R. § 404.1527(d)(2) (2008).

15      Opinions of treating physicians may only be rejected under certain circumstances.  See

16  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  "[W]here the treating

17  doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and

18  convincing' reasons."  Lester, 81 F.3d at 830 (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th

19  Cir. 1991)); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  "Even if the treating

20  doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion

21  without providing 'specific and legitimate reasons' supported by substantial evidence in the record .

22  . . ."  Lester, 81 F.3d at 830 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

23  Moreover, the opinion of an examining doctor is entitled to greater weight than that of a

24  nonexamining doctor.  Id. (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v.

25  Heckler, 753 F.2d 1450 (9th Cir. 1984)).  However, "[t]he findings of a nontreating, nonexamining

26  physician can amount to substantial evidence, so long as other evidence in the record supports those

27  findings."  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  The nonexamining physician's

28  opinion must be "supported by other evidence in the record and [be] consistent with it."  Morgan,

1    169 F.3d 595, 600 (9th Cir. 1999.)

2         "In addition, the regulations give more weight to opinions that are explained than to those

3    that are not . . . and to the opinions of specialists concerning matters relating to their specialty over

4    that of nonspecialists . . . ." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20

5    C.F.R. §§ 404.1527(d)(3), (5)). "[A]n ALJ may discredit treating physicians' opinions that are

6    conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings

7    . . . ." Batson, 359 F.3d at 1195 (citing Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992);

8    Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)). The ALJ is not required to discuss each

9    item of evidence, but the record should indicate that all evidence presented was considered. Craig v.

10   Apfel, 212 F.3d 433, 436 (8th Cir. 2000); Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

11   The reviewing court must "consider the record as a whole, weighing both evidence that supports and

12   evidence that detracts from the Secretary's conclusion." Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir.

13   1993).

14        Here, the ALJ provided specific and legitimate reasons based on substantial evidence for

15   rejecting the opinion of Plaintiff's treating physicians in determining Plaintiff's RFC. The ALJ

16   determined Plaintiff has a RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, to

17   stand and walk for 6 hours, and to sit for six hours, with no above-the-shoulder activity with the

18   dominant right arm.[7] (AR 19.) In arriving at his RFC determination, the ALJ stated he gave greater

19   weight to the opinions of Dr. Abbott (AR 241-246), Dr. Korsh (164-171), Dr. Maywood (298-302),

20   Dr. McSweeney (AR 155-161), Dr. Miles (AR 141-145), Dr. Sabourin (AR 225-229), and Dr.

21   Stover (AR 250-259). The ALJ concluded the opinions of these examining physicians were "more

22   consistent with the totality of the evidence, better supported by the medically acceptable diagnostic

23   techniques," and consistent with his assessment of Plaintiff's subjective complaints. (AR 24.)

24        Dr. Previte assessed the Plaintiff with limitations against repetitive bending, repetitive

25   stooping, pushing/ pulling with the right arm, and repetitive grasping with the right arm in a March

26   11, 2003 work status report. (AR 21, 213-222.) Dr. Previte completed physician's progress reports

27   from April 15, 2003 through January 22, 2004, describing Plaintiff to be temporarily totally disabled

28

---

[7] See pages 12-14 for a detailed description of the ALJ's determination of Plaintiff's RFC.

1   for periods of approximately four to six weeks.  (22.)  Also, Dr. Previte reported Plaintiff was unable

2   to work for periods of four to six weeks in work status reports from October 21, 2003 through

3   January 22, 2004.  (AR 22.)  On October 22, 2003, Dr. Kiddy reported Plaintiff was unable to

4   perform her usual work but he expected her to return to her normal work in ninety days.  (AR 22.)

5   Dr. Kiddy also concluded Plaintiff should remain off work for forty-five days on December 12, 2003

6   and January 21, 2004.  (AR 22, 280, 278.)  On January 10, 2007, Dr. Greenwald declared Plaintiff to

7   be totally disabled "based on the subjective factors of disability."  (AR 22, 260-270.)

8           However, the ALJ properly cited 15 legitimate and specific reasons why he gave little weight

9   to the opinions of Dr. Greenwald, Dr. Kiddy, and Dr. Previte (hereinafter "treating physicians").

10   (AR 22-24.)  First, the ALJ properly rejected Dr. Previte's work status reports because they were

11   devoid of diagnosis and citations to supporting medical findings.  (AR 22; 20 C.F.R. §

12   404.1527(d)(2) (2008).)  Second, the ALJ properly afforded Dr. Greenwald's opinion little weight

13   because he only saw Plaintiff on the day of the examination, and the weight given to even a treating

14   physician's opinion is directly proportional to the length of the relationship between the physician

15   and the Plaintiff and the frequency of the examinations.  (AR 22, 20 CFR section 404.1527(d).)

16   Third, the ALJ correctly refused to grant Dr. Kiddy's opinion controlling weight, because

17   controlling weight can be given only to treating sources, which do not include chiropractors such as

18   Dr. Kiddy.  (AR 22-23; 20 CFR section 404.1513(d)(1).)  Further, the ALJ correctly noted Dr.

19   Kiddy's opinion would be examined, even if it was not granted controlling weight.  (Id.)

20           Further, based on the inconsistency between Plaintiff's physicians' opinions and substantial

21   evidence in the record, the ALJ properly refused to grant Plaintiff's treating physicians controlling

22   weight.  See 20 C.F.R. section 404.1527(d)(2).  The ALJ's fourth reason for rejecting Plaintiff's

23   treating physicians' opinions was that they were inconsistent with Dr. Miles' May 24, 2002 report,

24   in which Dr. Miles concluded Plaintiff had no objective factors of disability and no permanent work

25   restrictions.  (AR 23.)  Fifth, the ALJ noted the treating physicians' opinions were also inconsistent

26   with Dr. Greenwald's own finding that Plaintiff had a normal motor examination on January 10,

27   2007.  Sixth, the ALJ concluded the treating physicians' opinions were refuted by the repeated

28   findings that Plaintiff had normal 5/5 motor strength by Dr. Previte, Dr. Maywood, Dr. Korsh, Dr.

1  Abbott, and Dr. Stover.  (AR 23.)  Seventh, the ALJ concluded the treating physicians' opinions

2  were rebutted by the repeated observations Plaintiff has a normal gait by Dr. Previte, Dr. Korsh, Dr.

3  Sabourin, Dr. Abbott, and Dr. Stover.  (AR 23.)

4  Similarly, the ALJ noted Plaintiff's treating physicians' opinions were inconsistent with: (1)

5  Dr. McSweeney's assessment she should only be precluded from very heavy lifting and repetitive

6  overhead work with her dominant right shoulder; (2) Dr. Murphy's March 9, 2004 report Plaintiff

7  should be precluded only from very heavy work and very forceful above-the-shoulder activities; (3)

8  Dr. Previte's own reports of March 11, 2003, August 7, 2003, and March 2, 2004, in which he solely

9  precludes Plaintiff from heavy or very heavy lifting as well as repetitive bending/stooping and/or

10 overhead work with the right arm; (4) Dr. Sabourin's May 16, 2005 report concluding Plaintiff had a

11 RFC for medium exertion; (5) Dr. Abbott's September 20, 2005 report that Plaintiff has a RFC to

12 lift/carry 20 pounds occasionally, 10 pounds frequently, stand/walk for 6 hours, and sit for 6 hour;

13 and (6) Dr. Stover's December 28, 2006 assessment of Plaintiff with a RFC with unlimited lifting,

14 carrying, standing, walking, sitting, and pushing/pulling with a limitation to frequent climbing,

15 balancing, kneeling, crouching, crawling, and stooping.  (AR 23.)  Ultimately, the ALJ properly

16 concluded the treating physicians' opinions were entitled to reduced weight in light of their

17 inconsistency with the weight of the record.  (AR 24.)

18 Although Plaintiff contends the ALJ improperly considered the opinions of Dr. Miles and Dr.

19 McSweeney because their reports predated the alleged onset date of Plaintiff's disability, their

20 opinions are relevant evidence which were appropriately considered by the ALJ.  "Evidence is

21 anything... that relates to[a] claim," including medical history, opinions, and statements about

22 treatment received.  20 C.F.R. section 404.1512(b)(2).  Both Dr. Miles and Dr. McSweeney

23 performed examinations directly related to Plaintiff's September 2001 injury, which Plaintiff alleges

24 led to her disability.  (AR 144-147; 156-159.)  Therefore, it was appropriate for the ALJ to consider

25 their opinions in rejected Plaintiff's treating physicians' opinions.

26 Further, the ALJ properly considered the opinions of Dr. Greenwald, Dr. Sabourin, Dr.

27 Abbott, and Dr. Stover in rejecting Plaintiff's treating physicians' opinions, even after disapproving

28 of their opinions with regard to Plaintiff's RFC and disability.  Although Plaintiff asserts the ALJ

should be "estopped" from considering the findings of physicians who the ALJ earlier rejected in determining Plaintiff's RFC and disability, it is not necessary to believe everything a physician says in order to credit testimony as substantial evidence.  Magallanes v. Bowen, 881 F.2d 747, 757 (9th Cir. 1989.)

The Court finds the ALJ did not commit legal error by rejecting the opinion evidence of Plaintiff's treating physicians and the ALJ's decision is supported by substantial evidence. Accordingly, the Court RECOMMENDS Plaintiff's motions for summary judgment be DENIED and Defendant's cross-motion for summary judgment be GRANTED as to this issue.

## V. CONCLUSION

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (2007) and Local Rule 72.1(d).

IT IS HEREBY ORDERED that **no later than September 1, 2009**, any party may file and serve written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed and served **no later than ten days** after being served with the objections.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  Martinez v. Y1st, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  August 7, 2009

_____
LOUISA S PORTER
United States Magistrate Judge

cc:        The Honorable Janis L. Sammartino
           all parties

- 21 -